and that his name was placed in the proper position upon the civil service list. It is clear that he has no right to be reinstated in a position in which there was no work for him to do.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

---

TUTHILL et al. v. FORBES et al.   (No. 6322.)

(Supreme Court, Appellate Division, First Department.   October 30, 1914.)

COSTS (§ 131*)—ACTION IN FORMA PAUPERIS.
       The mere fact that one of several plaintiffs is indigent does not justify an order permitting him to sue as a poor person.
       [Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 500–502; Dec. Dig. § 131.*]

Appeal from Special Term, New York County.

Action by Frank H. Tuthill and others against Margaret E. Forbes and others. From an order granting one plaintiff leave to sue as a poor person, defendants appeal. Order reversed, and motion denied.

See, also, 161 App. Div. 932, 146 N. Y. Supp. 1115.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

W. L. Cannon, of New York City, for appellants.

E. P. Kilroe, of New York City, for respondent.

PER CURIAM. The mere fact that one of several plaintiffs is indigent is not sufficient to justify an order permitting him to sue as a poor person. The fact that the cause is not yet at issue seems to be due solely to the difficulty which the plaintiffs have found in drawing a complaint which is proof against demurrer.

Order reversed, with $10 costs and disbursements, and motion denied.

---

LESEM v. MUTUAL LIFE INS. CO. OF NEW YORK. (No. 6237.)

(Supreme Court, Appellate Division, First Department.   October 30, 1914.)

1. INSURANCE (§ 646*)—ACTION ON POLICY—BURDEN OF PROOF—POWER OF ATTORNEY.
       Where, in a beneficiary's action on a life insurance policy, the insurer set up as a defense that it had made a loan on the policy to plaintiff's son, to whom plaintiff had given a power of attorney, of which the insurer had no knowledge when it made the loan, the name of plaintiff and the insured being forged to the loan papers, the burden was on the insurer to prove that the son had an absolute right under the power of attorney to hypothecate the policy for his benefit, to plaintiff's injury.
       [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1645–1668; Dec. Dig. § 646.*]

2. PRINCIPAL AND AGENT (§ 100*)—POWER OF ATTORNEY—CONSTRUCTION—POWER TO BORROW MONEY.
       A power of attorney, providing that the agent could collect and receipt for money and other property owing or belonging to the principal,

and invest same, collecting the income, and execute all written instruments necessary to the transaction of such business, and further providing that he should take possession of plaintiff's property, and lease same, and collect the proceeds thereof, and prosecute any judicial proceedings in respect thereto, and then that he could do whatever the principal could do, if personally present, pertaining to her affairs, did not authorize the attorney to pledge the principal's property for a loan of money.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 262–273, 345, 364, 368–373; Dec. Dig. § 100.*]

3. PRINCIPAL AND AGENT (§ 100*)—POWER OF ATTORNEY—CONSTRUCTION.
    No inference can be drawn from the language of a power of attorney that it confers on the attorney the right to hypothecate the principal's property for his own use.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 262–273, 345, 364, 368–373; Dec. Dig. § 100.*]

4. INSURANCE (§ 206*)—ASSIGNMENT OF POLICY—VALIDITY.
    An assignment of an insurance policy by the beneficiary prior to the insured's death, and without his consent, is invalid.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 474; Dec. Dig. § 206.*]

Appeal from Trial Term, New York County.

Action by Johanna Lesem against the Mutual Life Insurance Company of New York. Judgment for plaintiff, from which, and from an order, defendant appeals. Affirmed.

The following is the opinion of Greenbaum, J., directing judgment for the plaintiff:

[1] This is an action to recover on a policy of life insurance for $10,000, issued by defendant upon the life of Solomon J. Lesem and payable to the plaintiff, his wife. Solomon J. Lesem, the insured, died on the 9th day of March, 1911, at Worms, Germany. In the year 1902, owing to the ill health of the insured, he and his wife left the United States to sojourn at health resorts in the empire of Germany, having first secured from the defendant a written waiver of the restrictions imposed by the policy upon residence and travel. Prior to her departure, the plaintiff executed and deliveed to her son, William W. Lesem, a written power of attorney, conferring upon him authority to transact certain business affairs in her behalf. On or about March 15, 1910, without the knowledge or consent of plaintiff or her husband, William W. Lesem applied at the office of the defendant for a loan of $6,374 upon the policy in suit, and the defendant delivered to him a loan note application, at the foot of which was printed the following: "Loan will not be made unless this note is properly executed. See instructions printed on reverse side." Among the instructions referred to the following appear: "Signatures by an attorney in fact will not be accepted. Each party to the note must execute the note personally. When the policy is in favor of or has been assigned to the insured's wife, the note must be executed by the insured and the wife." On or about the 21st day of March, 1910, William W. Lesem presented himself at the office of the defendant and delivered to it the loan note application, purporting to be signed by the insured, Solomon J. Lesem, the plaintiff, and a witness named H. B. Drey. Thereupon the defendant delivered to him its check for $5,963, drawn to the order of Solomon J. Lesem and Johanna Lesem; such sum representing the amount of the loan, less the premium of $203.90 and of $206.50 interest in advance on the loan note. Thereafter William W. Lesem indorsed the check in the names of Johanna and Solomon J. Lesem, together with his own name, deposited it to the credit of his individual bank account, and kept the proceeds for his own purposes. In December, 1910, plaintiff returned to New York and within a week thereafter William W. Lesem died.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is undisputed that the defendant was ignorant of the existence of the power of attorney and of the fact that William W. Lesem was attempting to act in the transaction as the agent of the plaintiff, and that in accepting the loan note it relied upon the signatures subscribed to the note as the personal signatures of the plaintiff and her husband. It is true that, if the defendant had dealt with William W. Lesem as an agent, it might have protected itself by showing that such agent had apparent power to execute the transaction upon plaintiff's behalf. North River Bank v. Aymer, 3 Hill, 262; Hambro v. Burnand, L. R., 2 Kings Bench, 1904, 10, 19. But it did not deal with the plaintiff as agent, was ignorant of the existence of any agency, and assumed that it was dealing directly with the plaintiff and her husband, and parted with its money upon the faith that the signatures upon the note were their personal, genuine signatures. Under these circumstances the defendant, in order to maintain its defense, must show actual authority in the agent to execute the particular transaction in question, to wit, pledge his principal's property for a loan of money for his own benefit. The learned counsel for defendant evidently recognizes that defendant's right to set off the amount loaned upon the policy against the sum due must rest upon his successful contention that William W. Lesem had the inherent authority under the power of attorney to pledge the policy for the loan in question. Unless, then, the power of attorney, as between its creator and her appointee, conferred upon the latter the absolute right to hypothecate the policy for his benefit, and to her injury, the defendant cannot shift upon the plaintiff legal responsibility for the fraudulent act of her son.

[2] Fairly summarized, the power of attorney provides that William W. Lesem may "collect  *   *   *  and give acquittance for all moneys,  *   *   * debts, demands, securities, stocks, bonds, and all forms and kinds of property whatsoever, which are or shall be due, owing, or belonging to me, or in or to which I may have any right, title, and interest, to invest and reinvest the same, to collect and receive the income, interest, and profits thereof, and to give, sign, execute and deliver in my name, or in the name of my said attorney, all checks, drafts, acknowledgments, agreements, and all other instruments in writing of every kind and description as to my said attorney may seem proper or necessary for the effectuating and consummation of any investment or matter or thing for my benefit or use, or for any purpose whatsoever, and to sign, indorse, and check, and draw the same upon any and every bank  *   *   *  or depository  *   *   *  in which or with whom I  *   *   * may have any moneys or funds, or any drafts or  *   *   *  instruments to effectuate such purpose; to enter into or take possession of any and all lands, tenements, or hereditaments to me belonging, or in or to which I may have any right, title, or interest, or to the possession of which I may become entitled,  *   *   * "  and to let, lease, and receive proceeds of any sale thereof, execute and deliver any agreements or writings, and commence and prosecute judicial proceedings with respect thereto. By a clause at the end of the power it is provided that the attorney may execute and perform all acts and deeds which shall be expedient or necessary in the premises, and that it is "the intention and meaning of these presents to confer upon my said attorney power and authority to do, perform, and execute every act and deed, whether here enumerated or not, that I might or could do if personally present concerning, respecting, or pertaining to my affairs, or to my property of every kind and description."

It is apparent from an examination of the language of the power that no specific authority to pledge the plaintiff's property or to borrow money is conferred upon the agent. Such authority, if it exists, must therefore be found in the general language employed, or implied as necessary to the execution of the express powers granted. Craighead v. Peterson, 72 N. Y. 279, 28 Am. Rep. 150. It cannot be said that the power of borrowing money or the pledging of the property was necessary to the execution of any of the specific powers conferred. The concluding paragraph is somewhat unusual in character, and apparently confers broad powers upon the attorney; but was not this sweeping power nevertheless intended to be limited to unnamed acts that might arise in connection with some of the matters specifically enumerated therein? In MacKenzie on Powers of Attorney (1913) the English rule is

stated as follows (page 33): "If any special powers are meant to be included in the instrument they should be specifically set out, and not left to be connoted by any general clause, for the meaning of general words in a power of attorney is restricted by the operative clause, and it is an invariable rule that by such general words the donor must be held to confer on the donee only such powers, not specifically mentioned, as are absolutely necessary for the effective doing of the act for which the power was primarily given [citing cases].  *  *  *  No matter how general the language may be, or how wide its apparent sweep, it will be presumed by the courts to be infused with the will of the principal to execute only the specific acts expressly mentioned in the power, and such other acts as may be requisite for the complete fulfillment of the principal's declared intentions; that is, to do those ancillary acts which it is natural to suppose the principal himself would do to achieve his purpose." And the same author says (page 37): "The courts have been uncompromising on the point that the attorney must not borrow without express authority."

Our courts have recognized the correctness of the rule substantially as stated by MacKenzie, supra. Holtsinger v. Nat. Corn Exchange Bank, 31 N. Y. Super. Ct. 64, affirmed by the Court of Appeals, 3 Alb. Law J. 305. Considered in the light of the recognized canons of interpretation, it seems clear that the general language of the power cannot be construed as conferring upon the agent power to pledge plaintiff's property for a loan of money. The structure of the instrument and the terms therein employed directly contradict the assumption of a grant of general and unrestricted authority to do any act that the plaintiff might do if personally present. Indeed, if such had been her intention, no enumeration of specific powers would have been necessary or appropriate to the desired end. Phrases may occur in the instrument which, when isolated from their general text, tend to support a broader construction; but the controlling aim and purpose must be ascertained from a consideration of the entire language of the power, and not from detached expressions, severed from their natural connection. The defendant relies specially upon the language of the power providing that the agent may execute all checks, drafts, and other instruments for any purpose whatsoever, as well as upon the general grant of authority to execute every act and deed, whether enumerated therein or not, pertaining to plaintiff's affairs. But these phrases, when read in their proper relation to the subject-matter and context of the instrument, must be held to confer power to perform only such acts as are necessary to the execution of the specific authority vested in the agent, and pledging the policy was not one of the specific powers conferred.

[3] But independent of and in addition to the foregoing reasons the rule is well settled that no inference may be drawn from the language of a power that it conferred the right upon the attorney to hypothecate the property of the principal for his own use. The recent case of Porges v. U. S. Mort. & Trust Co., 203 N. Y. 181, 189, 190, 96 N. E. 424, discusses this rule. In that case it was said that, assuming power was conferred upon the agent to indorse checks in the name and behalf of the principal, his indorsement of a check "for his personal use and gain was not within that power." Says the court (203 N. Y. at page 190, 96 N. E. at page 427): "A power to act for another, however general its terms, or wide its scope, presupposes an integrity and faithfulness in its exercise, and cannot be enlarged by implication or construction to the justification of a diversion to the use of the agent of moneys or property subject to the agency. Manifestly this instrument did not transfer to Hoyt the ownership of the property to which it related. By virtue of it Hoyt was the plaintiff's attorney or agent, with the powers it contained and for the purposes it prescribed. The law will not permit an attorney or agent under color of the authority bestowed by his principal to apply the property of that principal to his own use. That is a breach of trust which a court will not sanction or tolerate. Robinson v. Chem. Nat. Bank, 86 N. Y. 404; Wright v. Cabot, 89 N. Y. 570; Kern's Estate, Gilpin's Appeal, 176 Pa. 373 [35 Atl. 231]."

[4] There is also much force in the contention that the plaintiff had no power to assign the policy without her husband's consent, and that any assignment without such consent would be void. Dannhauser v. Wallenstein,

169 N. Y. 199, 62 N. E. 160; Brummer v. Cohn, 86 N. Y. 11, 40 Am. Rep. 503. The signatures of plaintiff's husband to the instruments upon which defendant made the loan were unquestionably forgeries. It therefore follows that the husband's consent to the assignment was not procured and there was no assignment of the policy. The defendant cannot recoup itself for the money fraudulently obtained from it by plaintiff's son by setting it off against the sum due on the policy.

There must be judgment for the plaintiff as prayed for.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

J. T. Davies, Jr., of New York City, for appellant.
J. Frankhenheimer, of New York City, for respondent.

PER CURIAM. Judgment and order affirmed, with costs, on opinion of Greenbaum, J. Order filed.

---

(86 Misc. Rep. 670)

**PEOPLE ex rel. URBAN WATER SUPPLY CO. v. CONNOLLY, Borough President.**

(Supreme Court, Special Term, Queens County. August, 1914.)

1. WATERS AND WATER COURSES (§ 200*)—WATER COMPANIES—CONTRACT FOR WATER SUPPLY.

　　Since a contract, between a corporation organized under the Transportation Corporations Law (Consol. Laws, c. 63) to supply water to the town of North Hempstead and the city of New York, for delivery by the corporation into the mains of such city, in the vicinity of a pumping station in the First ward of the borough of Queens, of a specified amount of water, was not a contract within Transportation Corporations Law, § 85, providing that a waterworks corporation may, by filing an amended certificate, contract with cities other than those mentioned in its certificate of incorporation, the filing of an amended certificate could not confer upon the corporation any further or additional franchises or rights.

　　[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

2. WATERS AND WATER COURSES (§ 200*)—PROCUREMENT OF TEMPORARY PUBLIC WATER SUPPLY.

　　Greater New York Charter (Laws 1901, c. 466) §§ 471, 472, 1618, Laws 1905, cc. 724, 725, Laws 1906, c. 314, and Laws 1907, c. 438, vest the city of New York with full power to contract to procure by purchase or otherwise an additional water supply for temporary and emergency use.

　　[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

Application for writ of mandamus by the People, on the relation of the Urban Water Supply Company, against Maurice E. Connolly, as President of the Borough of Queens, City of New York. Application denied.

Clarence J. Shearn, of New York City, for relator.
Frank L. Polk, Corp. Counsel, of New York City (Edward S. Malone and William E. C. Mayer, both of New York City, of counsel), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes